FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

SEP 15 2008

Stephan Harris, Clerk
Cheyenne

Bret F. King
Wyoming Bar No. 5-2353
King & King, LLC
610 W Broadway, Suite 201
P.O. Box 40
Jackson, WY 83001
(307) 733-2904
(307) 733-10589 (fax)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| BEAVER CREEK LAND & CATTLE, LLC, a Utah Limited Liability Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PHILLIP A. WOLF,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 08-CV-202-J<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

The Plaintiff, Beaver Creek Land & Cattle, LLC, by and through its undersigned counsel, Bret F. King of King & King, LLC, and for its cause of action against the Defendant states and alleges as follows:

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

1. At all times material to this Complaint, the Plaintiff is and was a Utah limited liability company authorized to do business in Wyoming.

2. At all times material to this Complaint, the Defendant Phillip A. Wolf, is and was a resident of Colorado.

3. Venue and jurisdiction are proper in this Court pursuant to 28 U.S.C.A. § 1332(a)(1) under diversity jurisdiction as the parties in this action are citizens of different states and the amount in controversy exceeds $75,000.

4. The Defendant entered into a written Purchase and Sale Agreement, hereinafter "Agreement," with Plaintiff for the purchase of real property located in Hot Springs County, Wyoming, commonly known as Lost Peaks Ranch, a copy of the Agreement is attached hereto as *Exhibit 1*.

5. The Purchase and Sale Agreement, along with Addendum A to the Purchase and Sale Agreement, provide for the sole agreement between the parties with regard to sale of the land identified in the Purchase and Sale Agreement.

6. The Closing was to occur on or before June 30, 2008 at Uinta Title & Insurance of Evanston, Wyoming.

7. The Defendant failed to meet his obligations under the Agreement by failing to tender the purchase price at or before the closing, thereby breaching the Agreement.

8. The Plaintiff was ready, willing and able to perform under the Agreement once the Defendant had tendered the purchase price.

9. The Plaintiff had a pre-existing contract to purchase the property from another party.

10. The Defendant was aware that the Plaintiff had a pre-existing contract for the purchase of the land, and that the Plaintiff was relying upon using the funds from Defendant's purchase to fund the purchase from the original seller. The Defendant was also aware that the Plaintiff was going to make a substantial profit on the difference between the amount the

Plaintiff was going to pay the original seller and the amount to be paid by the Defendant to the Plaintiff.

11. Due to the Defendant's breach of his Agreement with the Plaintiff, the Plaintiff was unable to meet its obligations under its contract with the original seller and the Plaintiff defaulted under its obligations with the original seller and Plaintiff was damaged thereby.

12. The Defendant is in breach of the Agreement, and due to Defendant's breach the Plaintiff has incurred damages in an amount in excess of the jurisdictional minimum of this court and in an amount to be proven at the time of trial, but which include the amount of the earnest money deposit paid by Plaintiff and forfeited to the original seller, costs and attorney's fees, lost profit and interest.

13. The amount of the earnest deposit and lost profits are liquidated sums and the Plaintiff is entitled to interest on such amount at the statutory rate of 10% per annum from the time of default and until paid.

WHEREFORE, Plaintiffs pray for relief from the Court as follows:

1. Expenses and costs incurred by the Plaintiff in being unable to perform under its contract with the original seller;

2. Compensation in the amount the Plaintiff stood to gain had the Defendant fully performed under the Agreement;

3. Other costs and expenses incurred by the Plaintiff in contemplation of completion of the Agreement by Defendant;

4. Interest on the earnest money forfeited by the Plaintiff and the lost profits; and

5. Any other relief that the Court deems appropriate.

DATED this 12th day of September, 2008.

/s/ Bret F. King
Bret F. King
Wyoming Bar No. 5-2353
King & King, LLC
P. O. Box 40
Jackson, WY 83001-0040
(307) 733-2904
(307) 733-1058 (fax)
kinglaw@wyom.net
*Attorney for Plaintiff*

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT ("**Agreement**") is made as of May 20, 2008 (the "**Effective Date**"), by and between Phillip A. Wolf ("**Buyer**"), and Beaver Creek Land & Cattle, LLC ("**Seller**"). Buyer and Seller are sometimes referred to herein as the "parties" or, individually, as a "party."

### RECITALS:

A.  Seller owns or will own certain real property located in Hot Springs County, Wyoming and commonly known as the Lost Peaks Ranch, which is more particularly described on Exhibit A attached hereto (the "**Property**"). The Property includes all water and mineral rights that Seller acquired in its purchase of the Property that are appurtenant to the Property.

B.  Seller desires to sell, and Buyer desires to purchase, the Property, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants set forth below in this Agreement, and other good and valuable consideration, Seller and Buyer agree as follows:

### AGREEMENT:

### ARTICLE I

1.1  **Defined Terms**. Capitalized terms used in this Agreement have the meaning given to them in this Agreement.

1.2  **Purchase and Sale**. Upon the terms and conditions stated below, Seller hereby agrees to sell and convey the Property to Buyer, and Buyer hereby agrees to purchase the Property from Seller and to pay the Purchase Price to Seller.

### ARTICLE II

2.1  **Purchase Price**. The purchase price for the Property shall be Seventy Five Million Dollars ($75,000,000.00) (the "**Purchase Price**"). Buyer shall pay the Purchase Price, less the amount of the Earnest Money Deposit, to Seller in cash at Closing. Buyer shall pay purchase price to Seller via Treasury Account to escrow for closing.

2.2  **Earnest Money Deposit**. Concurrent with the full execution of this Agreement, Buyer shall deposit with Title Company the sum of Zero Dollars ($00.00) (the "**Earnest Money**"). Title Company shall hold the Earnest Money, in escrow, to be applied against the Purchase Price at Closing. If Buyer fails to close its purchase of the Property on or before the Closing Date, the Earnest Money shall be released to Seller, which Seller may retain in addition to any and all other remedies available to Seller in law or equity.

### ARTICLE III

*Exhibit A*

27 May 2008 3:48PM    WOLF INTERSTATE        7208989028                  p.2

## ARTICLE III

3.1  Title Insurance.  At the Closing, Seller shall cause a ALTA standard Owner's Policy of Title Insurance (the "Title Policy") for the Property to be furnished to Buyer. Seller shall pay the title insurance premium for the Title Policy. Buyer shall have the right to obtain extended coverage for the Title Policy by paying that portion of the title insurance premium required to obtain any extended coverage.

## ARTICLE IV

4.1  Seller's Representations & Warranties.  Seller represents and warrants to Buyer that the following statements are true and shall be true on the Closing Date:

4.1.1  Seller possesses all requisite power and authority to enter into this Agreement and to perform its obligations according to the terms and conditions of this Agreement.

4.1.2  The execution of this Agreement or any instrument or document required by this Agreement, and the consummation of the transaction contemplated by this Agreement will not violate any order, ruling, certificate or license, regulation or demand of any court or regulatory agency to which Seller or the Property is subject or any agreement to which Seller is a party.

4.1.3  This Agreement, when duly executed by Seller, shall constitute a valid, legal and binding obligation of Seller, and shall be enforceable.

4.1.4  Seller is the owner of the Property or shall be the Owner of the Property on or before the Closing.

## ARTICLE V

5.1  Buyer's Representations & Warranties.  Buyer represents and warrants to Seller that the following statements are true and shall be true on the Closing Date:

5.1.1  The execution of this Agreement or any instrument or document required by this Agreement, and the consummation of the transaction contemplated by this Agreement will not violate any order, ruling, certificate or license, regulation or demand of any court, regulatory agency or other tribunal to which Buyer is subject or to any agreement to which Buyer is a party. The consummation will be through a treasury account as outlined in section 2.1.

5.1.2  This Agreement, when duly executed by Buyer, shall constitute a valid, legal and binding obligation of Buyer, and shall be enforceable.

## ARTICLE VI

6.1  Date and Place of Closing.  The closing of the transactions described in this Agreement (the "Closing") shall take place on a date determined by Seller on or before June 30,

2


2008 (the "Closing Date") in the offices of title company selected by Seller (the "Title Company"), or such other location as Buyer and Seller shall designate.

    6.2    Items to be delivered at the Closing.

        6.2.1    Seller. On or before the Closing Date, Seller shall deliver to Title Company each of the following items, to be delivered to Buyer at the Closing:

            6.2.1.1    A Special Warranty Deed in the statutory form (the "Deed");

            6.2.1.2    A bill of sale for the "cow camp," range improvements and other personal property and equipment to be transferred at the Closing; and

            6.2.1.3    All additional documents and instruments which are reasonably necessary to the consummation of this transaction.

        6.2.2    Buyer. On or before the Closing Date, Buyer shall deliver to Title Company each of the following items:

            6.2.2.1    Valid funds in the full amount of the Purchase Price, less the Earnest Money Deposit, plus Buyer's share of Closing costs and prorations, as provided below; and,

            6.2.2.2    All additional documents and instruments which are reasonably necessary to the consummation of this transaction.

    6.3    Closing Prorations. Ad valorem and similar taxes and assessments relating to the Property shall be prorated between Seller and Buyer as of the Closing Date, based upon the best available estimates of the amount of taxes that will be due and payable on the Property during the calendar year of the Closing. All other expenses of the Property and any rental income shall also be prorated as of the Closing Date. The provisions of this section shall survive the Closing and delivery of the Deed.

    6.4    Closing Costs. All escrow and Closing fees charged by Title Company shall be divided equally between, and paid by, Buyer and Seller. Buyer shall pay all recording fees. Seller shall pay the premium for the Title Policy. Buyer and Seller shall each pay for the cost of their own legal counsel and other advisors in connection with this transaction.

<p align="center">ARTICLE VII</p>

    7.1    No Brokers; Indemnity. Seller and Buyer represent and warrant to each other that neither has contacted any real estate broker, finder, or other party in connection with this transaction, to whom any real estate brokerage, finder, or other fees may be due or payable with respect to the transaction contemplated hereby. The provisions of this section shall survive the Closing and delivery of the Deed.

    7.2    Post Closing Covenants. Buyer hereby acknowledges and agrees that (i) a former owner of the Property has the right to continue to graze cattle on the deeded portions of the Property from and after the Closing until October 15, 2008, subject to a lease that Seller shall assign to Buyer

 AS

<p align="center">3</p>

at Closing, (ii) such former owner may remain in possession of the "Mill Iron" location home on the Property until September 1, 2008, (iii) the former owner's agent "John" may continue to occupy the home he occupies as of the Effective Date until October 15, 2008, (iv) such former owner shall be entitled to hunting rights for 1 elk and 2 deer for the 2008 season, and ... The provisions of this section shall survive the Closing and delivery of the Deed.

## ARTICLE VIII

8.1  **Governing Law.** The laws of the State of Wyoming shall govern the validity, enforcement, and interpretation of this Agreement, unless otherwise specified herein.

8.2  **Entirety and Amendments.** This Agreement embodies the entire agreement between the parties and supersedes any prior agreements and understandings, if any, relating to the Property, and may be amended only by written instrument executed by Seller and Buyer.

8.3  **Multiple Counterparts.** This Agreement may be executed in a number of identical counterparts. Each of such counterparts is to be deemed an original for all purposes, and all such counterparts shall, collectively, constitute one agreement.

8.4  **Parties Bound.** This Agreement shall be binding upon and inure to the benefit of Seller and Buyer, and their respective heirs, successors and assigns.

8.5  **Further Acts.** In addition to the acts and deeds recited herein and contemplated to be performed, executed, and delivered by Seller and Buyer, Seller and Buyer agree to perform, execute, and deliver or cause to be performed, executed, and delivered at the Closing or after the Closing any and all such further acts, deeds, and assurances as may be necessary to consummate the transactions contemplated hereby. Buyer may record a memorandum of this Agreement against the Property.

EXECUTED as of the Effective Date.

**SELLER:**

Beaver Creek Land & Cattle, LLC

By: _____
Its: __Manager__

**BUYER:**

Phillip A. Wolf
PO Box 16804
Golden, CO 80402

_____
Phillip A. Wolf

4

# EXHIBIT "A"

### (Property Description)

**EXHIBIT "A"**
The land referred to in this Commitment is situated in the State of Wyoming, County of Hot Springs, and is described as follows:

**PARCEL 1:**
**TOWNSHIP 7 NORTH, RANGE 1 WEST, WRM, HOT SPRINGS COUNTY, WYOMING**
SECTION 2: W½ OF LOT 2, ALL OF LOTS 3 AND 4, W½SW¼NE¼, S½NW¼
SECTION 3: LOTS 1, 2, 3 AND 4, S½N½
SECTION 4: LOTS 1, 2, 3 AND 4, S½N½
SECTION 5: LOTS 1, 2, 3 AND 4, S½N½
**TOWNSHIP 8 NORTH, RANGE 1 EAST, WRM, HOT SPRINGS COUNTY, WYOMING**
SECTION 1: LOTS 1, 2, 3 AND 5, S½NE¼, SE¼NW¼, N½S½, N½S½S½
SECTION 2: LOT 2
**TOWNSHIP 8 NORTH, RANGE 1 WEST, WRM, HOT SPRINGS COUNTY, WYOMING**
SECTION 15: LOT 2
SECTION 20: LOT 1
SECTION 21: LOTS 1, 2, 3, 4 AND 5, NE¼SE¼, S½SE¼, SE¼SW¼
SECTION 22: ALL
SECTION 23: S½NW¼, S½
SECTION 26: ALL
SECTION 27: ALL
SECTION 28: ALL
SECTION 29: LOTS 1, 2 AND 3, NE¼NE¼, S½NE¼, SE¼, E½SW¼, SW¼SW¼
SECTION 32: ALL
SECTION 33: ALL
SECTION 34: ALL
SECTION 35: W½, NE¼, W½W½SE¼
**TOWNSHIP 8 NORTH, RANGE 2 EAST, WRM, HOT SPRINGS COUNTY, WYOMING**
SECTION 3: LOT 4
SECTION 4: LOTS 1, 2, 3 AND 4, S½N½, S½
SECTION 5: LOTS 1, 2, 3 AND 4, S½N½, S½
SECTION 6: LOTS 1, 2, 3, 4, 5, 6 AND 8, S½NE¼, SE¼NW¼, NE¼SW¼, N½SE¼, SE¼SE¼
**TOWNSHIP 9 NORTH, RANGE 1 EAST, WRM, HOT SPRINGS COUNTY, WYOMING**
SECTION 35: LOT 1
**TOWNSHIP 9 NORTH, RANGE 2 EAST, WRM, HOT SPRINGS COUNTY, WYOMING**
SECTION 31: LOTS 4 AND 5 **EXCEPTING** THAT PORTION OF LOT 5 CONVEYED TO THE COUNTY OF HOT SPRINGS IN BOOK 28 OF DEEDS, PAGE 35 RECORDED OCTOBER 16, 1945, S½SE¼
SECTION 32: LOTS 1, 2, 3 AND 4, S½S½
SECTION 33: LOTS 1, 2, 3 AND 4, SE¼SW¼, SW¼SE¼, SW¼SW¼

(Continued next page)

**TOWNSHIP 44 NORTH, RANGE 95 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 19: SE¼NE¼, NE¼SE¼
SECTION 20: SW¼SE¼, SE¼SW¼, N½SW¼, S½NW¼
SECTION 28: NW¼NW¼
SECTION 29: N½N½, SW¼NW¼, W½SW¼
SECTION 30: LOT 4, S½NE¼, E½SW¼, SE¼
SECTION 31: LOT 1, NE¼NW¼, N½NE¼
SECTION 32: NW¼NW¼
**TOWNSHIP 44 NORTH, RANGE 96 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 23: SW¼NE¼
SECTION 25: SE¼
**TOWNSHIP 43 NORTH, RANGE 98 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 4: W½SW¼
SECTION 5: S½
SECTION 6: LOTS 3 AND 4, E½SW¼, SE¼
SECTION 7: LOTS 1, 2, 3 AND 4 **EXCEPTING** A PORTION OF LOT 4 CONVEYED TO THE HISTORICAL LANDMARK COMMISSION OF THE STATE OF WYOMING IN INSTRUMENT RECORDED FEBRUARY 2, 1940 IN BOOK 24 OF DEEDS, PAGE 63, NE¼NE¼
SECTION 8: LOTS 1, 2, 3, 4 AND 5
**TOWNSHIP 45 NORTH, RANGE 98 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 27: S½S½
SECTION 28: SE¼SW¼, S½SE¼
SECTION 33: E½NW¼, NE¼
SECTION 34: N½, N½S½, SE¼SE¼
SECTION 35: NW¼, W½SW¼
**TOWNSHIP 43 NORTH, RANGE 99 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 1: S½, NW¼, N½NE¼
SECTION 2: LOTS 1, 2, S½SW¼, N½S½, NE¼, SE¼NW¼
SECTION 3: SE¼, S½SW¼
SECTION 4: S½SE¼
SECTION 9: NE¼, SE¼SE¼ AND THAT PART OF THE N½SE¼ WHICH LIES SOUTH OF THE REGULARLY ESTABLISHED COUNTY ROAD AS OF APRIL 7, 1931, RUNNING IN AN EASTERLY AND WESTERLY DIRECTION
SECTION 10: LOTS 1, 2 AND 3, NW¼, N½NE¼, SW¼NE¼, NW¼SE¼, NE¼SW¼, S½SW¼, SW¼SE¼ AND THAT PORTION OF THE NW¼SW¼ WHICH LIES SOUTH OF THE REGULARLY ESTABLISHED COUNTY ROAD AS OF APRIL 7, 1931 RUNNING IN AN EASTERLY AND WESTERLY DIRECTION
SECTION 11: LOTS 1, 2, 3 AND 4
SECTION 12: LOTS 1, 2, 3 AND 4
SECTION 15: LOTS 1 AND 2, N½ LOT 4, NW¼
SECTION 16: N½ OF LOT 2, N½, SW¼, N½SE¼
**TOWNSHIP 43 NORTH, RANGE 100 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 5: N½NW¼, W½NE¼
SECTION 7: LOTS 3 AND 4, NE¼SW¼

(Continued next page)

6

**TOWNSHIP 44 NORTH, RANGE 100 WEST OF THE 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 19: S½NW¼, SW¼ **EXCEPTING THEREFROM** LAKE CREEK RESERVOIR as set out in intstrument recorded September 24, 1971 in Book 97 of Photo Static Records, Page 100.
SECTION 28: SW¼SW¼
SECTION 29: S½S½
SECTION 30: W½ **EXCEPTING THEREFROM** LAKE CREEK RESERVOIR as set out in intstrument recorded March 27, 1981 in Book 17 of Microfilm Records, Page 504.
SECTION 32: NW¼, NE¼SW¼, N½NE¼, SW¼NE¼, NW¼SE¼
SECTION 33: N½NW¼
**TOWNSHIP 43 NORTH, RANGE 101 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 1: LOT 1, SE¼NE¼, E½SE¼
SECTION 2: LOTS 3 AND 4, SE¼NW¼, SW¼
SECTION 3: LOTS 1, 2 AND 4, S½N½, S½
SECTION 4: LOTS 1, 2, 3 AND 4, S½NE¼, S½SE¼, S½NW¼, N½SW¼, SW¼SW¼
SECTION 5: LOTS 1, 2, 3 AND 4, S½N½, S½
SECTION 6: LOTS 1, 2, 3, 4, 5, 6 AND 7, S½NE¼, SE¼NW¼, E½SW¼, SE¼
SECTION 7: LOTS 1, 2, 3 AND 4, E½, SE¼SW¼
SECTION 8: ALL
SECTION 9: W½, E½E½, W½SE¼
SECTION 10: ALL
SECTION 11: N½NE¼, SW¼NE¼, S½SE¼NE¼, NE¼SE¼NE¼, E½NW¼, SW¼NW¼, SW¼, N½SE¼
SECTION 12: S½NW¼, NE¼SW¼, N½SE¼
SECTION 17: N½N½, S½NW¼, SW¼NE¼
SECTION 18: LOTS 2, 3 AND 4, NE¼, SE¼NW¼, E½SW¼, W½SE¼, NE¼NW¼
**TOWNSHIP 43 NORTH, RANGE 102 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 1: LOTS 1, 2, 3 AND 4, SW¼, W½SE¼, NW¼, SW¼NE¼, NW¼NE¼
SECTION 2: S½SW¼, E½, SE¼NW¼, NE¼SW¼
SECTION 11: N½N½
SECTION 12: LOTS 1, 2, 3 AND 4, W½, W½E½
SECTION 13: LOTS 3 AND 4, W½W½
SECTION 14: N½NW¼, S½NW¼, SW¼, E½
SECTION 15: NE¼NW¼, W½NE¼, SE¼NE¼, N½SE¼, SE¼SE¼
SECTION 22: SE¼NW¼, E½SW¼, NE¼NE¼, S½NE¼, SE¼
SECTION 23: W½NW¼, SE¼NW¼, SW¼, W½SE¼
SECTION 24: LOT 4, W½W½, SE¼SW¼, SW¼SE¼
SECTION 25: LOTS 1 AND 2, NW¼NE¼, NE¼NW¼
SECTION 26: NE¼NW¼, NW¼NE¼
SECTION 27: NW¼NE¼
**TOWNSHIP 44 NORTH, RANGE 102 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 24: LOT 2, SW¼NE¼, SE¼NW¼
SECTION 26: S½SW¼
SECTION 34: SE¼NE¼, E½SE¼
SECTION 35: N½NE¼, SE¼NE¼, S½SW¼, SE¼

(Continued next page)

A3

**PARCEL 2:**
**TOWNSHIP 45 NORTH, RANGE 96 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 19: LOT 7, N½NE¼, SW¼NE¼, SE¼NW¼
**TOWNSHIP 45 NORTH, RANGE 97 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 13: S½SE¼, SW¼, SW¼NW¼
SECTION 14: S½, N½NE¼, NW¼NW¼, SE¼NE¼ **EXCEPTING THEREFROM** A TRACT OF LAND CONVEYED TO THE STATE HIGHWAY COMMISSION OF WYOMING IN INSTRUMENT RECORDED MARCH 10, 1988 IN BOOK 39 OF MICROFILM RECORDS, PAGE 52 BUT INCLUDING THAT PORTION OF LAND DESCRIBED IN INSTRUMENT RECORDED SEPTEMBER 20 1999 IN BOOK 82 OF MICROFILM RECORDS, PAGE 760.
SECTION 15: SE¼SE¼, W½, N½NE¼, SW¼NE¼
SECTION 20: S½NE¼, SE¼, S½SW¼
SECTION 21: S½, NE¼, S½NW¼, NE¼NW¼
SECTION 22: ALL
SECTION 23: N½, SW¼, N½SE¼ **EXCEPTING THEREFROM** A TRACT OF LAND CONVEYED TO THE STATE HIGHWAY COMMISSION OF WYOMING IN INSTRUMENT RECORDED MARCH 10, 1988 IN BOOK 39 OF MICROFILM RECORDS, PAGE 52 BUT INCLUDING THAT PORTION OF LAND DESCRIBED IN INSTRUMENT RECORDED SEPTEMBER 20 1999 IN BOOK 82 OF MICROFILM RECORDS, PAGE 760.
SECTION 24: ALL
SECTION 25: S½, S½N½
SECTION 26: N½, N½S½
SECTION 27: ALL
SECTION 28: W½, N½NE¼, SW¼NE¼, SE¼
SECTION 29: N½NE¼, SE¼NE¼, NE¼SE¼, N½NW¼, SW¼NW¼, W½SW¼
SECTION 30: LOTS 1, 2, 3 AND 4, SE¼, S½NE¼
SECTION 31: N½NE¼
SECTION 32: NW¼NW¼
SECTION 33: N½, S½SE¼, SE¼SW¼
SECTION 34: SW¼SW¼, NE¼, E½NW¼
SECTION 35: NW¼NW¼ **EXCEPTING THEREFROM** A TRACT OF LAND CONVEYED TO THE STATE HIGHWAY COMMISSION OF WYOMING IN INSTRUMENT RECORDED MARCH 10, 1988 IN BOOK 39 OF MICROFILM RECORDS, PAGE 52 BUT INCLUDING THAT PORTION OF LAND DESCRIBED IN INSTRUMENT RECORDED SEPTEMBER 20, 1999 IN BOOK 82 OF MICROFILM RECORDS, PAGE 760
**TOWNSHIP 44 NORTH, RANGE 98 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 7: LOTS 3 AND 4, SE¼SW¼, SW¼SE¼
SECTION 8: SE¼SE¼
SECTION 9: SW¼SW¼, SE¼SW¼, S½SE¼
SECTION 10: SW¼SW¼, S½SE¼SW¼
SECTION 15: NW¼, N½SW¼, SW¼SW¼
SECTION 17: NE¼, S½NW¼, NW¼SW¼, NE¼NW¼
SECTION 18: LOT 1, E½W½
SECTION 19: LOTS 1, 2, 4, 5, 7, 8, 12 AND 13, E½SW¼,
SECTION 22: NE¼NE¼, S½NE¼, E½SW¼, NW¼SE¼
SECTION 23: SW¼NW¼, NW¼SW¼
SECTION 27: N½NW¼, SW¼NW¼
SECTION 28: E½NE¼, SW¼NE¼, NE¼SE¼, SW¼SE¼
SECTION 30: LOTS 1, 2, 3 AND 4, NE¼NW¼, SE¼SW¼
SECTION 31: LOT 1, NE¼NW¼
SECTION 33: NW¼NE¼, N½NW¼

(Continued next page)

**TOWNSHIP 45 NORTH, RANGE 98 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 23: SE¼, N½SW¼, SW¼SW¼, S½NW¼, S½NE¼
SECTION 24: SE¼
SECTION 25: E½NE¼, E½SE¼, W½
SECTION 26: NE¼, N½SE¼, W½NW¼, NW¼SW¼
**TOWNSHIP 44 NORTH, RANGE 99 WEST OF THE 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 12: E½SE¼
SECTION 24: E½SE¼, SW¼SE¼
SECTION 25: E½NE¼, SE¼
**TOWNSHIP 43 NORTH, RANGE 102 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 3: W½, SW¼SE¼
SECTION 4: ALL
SECTION 5: ALL
SECTION 6: NE¼, N½SE¼
SECTION 8: N½NW¼, SE¼NW¼, N½SE¼, SE¼SE¼, NE¼
SECTION 9: N½, N½S½, S½SW¼
SECTION 10: NW¼, N½SW¼, SW¼SW¼, W½NE¼, S½SE¼
SECTION 11: S½SW¼
SECTION 14: N½NW¼
SECTION 15: NE¼NE¼
SECTION 17: LOT 4
SECTION 21: LOTS 1, 2, 3, 4 AND 5, SW¼NE¼
SECTION 27: LOTS 1, 2, 3 AND 4
SECTION 28: LOT 1
**TOWNSHIP 44 NORTH, RANGE 102 WEST, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 19: S½, S½N½
SECTION 20: NW¼SW¼
SECTION 29: NW¼, NW¼SW¼
SECTION 30: N½, W½SW¼, SW¼SE¼, NE¼SE¼
SECTION 31: NW¼NW¼, E½NW¼
SECTION 32: E½NW¼, SW¼NW¼, E½SW¼, SE¼, NW¼SW¼
SECTION 33: S½
SECTION 34: S½SW¼

(Continued next page)



**PARCEL 3:**
**TOWNSHIP 43 NORTH, RANGE 99 WEST OF THE 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 17: SW¼
SECTION 18: LOTS 1, 2, 3 AND 4, E½NW¼, W½NE¼, NE¼SW¼, SE¼
SECTION 19: LOTS 1, 2, 3 AND 4, E½SW¼, SE¼, SE¼NW¼, NE¼
SECTION 20: S½NW¼, NW¼SW¼, N½SW¼SW¼, NW¼NW¼, N½NE¼SW¼, N½SW¼NE¼
SECTION 30: LOTS 3, 4 AND 5, NE¼NW¼
**TOWNSHIP 43 NORTH, RANGE 100 NORTH, 6TH PM, HOT SPRINGS COUNTY, WYOMING**
SECTION 1: S½SW¼, SW¼SE¼
SECTION 2: S½SE¼
SECTION 10: SE¼SE¼
SECTION 11: N½NE¼, SE¼NE¼
SECTION 12: N½, E½SW¼, W½SE¼
SECTION 13: S½, S½N½, N½N½
SECTION 14: S½, S½N½, NE¼NE¼
SECTION 15: S½, E½NE¼
SECTION 17: NW¼, SW¼NE¼, N½SE¼, SE¼SE¼
SECTION 18: NE¼NW¼, N½NE¼, SE¼NE¼
SECTION 19: LOTS 1, 2, 3 AND 4, NE¼NW¼, N½NE¼, SE¼NE¼, E½SW¼, W½SE¼, SE¼SE¼
SECTION 20: E½NE¼, NE¼SE¼, S½NW¼, NE¼SW¼, S½SW¼, W½SE¼
SECTION 21: N½N½, SE¼NE¼, S½SW¼, SE¼
SECTION 22: ALL
SECTION 23: N½, SW¼, W½SE¼, NE¼SE¼
SECTION 24: ALL
SECTION 25: LOT 1, N½N½
SECTION 26: NW¼NE¼, NE¼NW¼
SECTION 28: LOT 2, NE¼NW¼, NW¼NE¼
SECTION 29: LOTS 2 AND 3, NW¼, W½NE¼, SE¼NE¼, N½SW¼, SW¼SW¼
SECTION 30: LOTS 1, 2, 3 AND 4, E½W½, W½E½, NE¼NE¼
SECTION 31: LOT 1, NE¼NW¼, NW¼NE¼

(Continued next page)

10

## ADDENDUM A

## PURCHASE AND SALE AGREEMENT

### Dated May 20, 2008

This Addendum is an integral part of the Purchase and Sale Agreement ("the Agreement") dated May 20, 2008 between Beaver Creek Land & Cattle, LLC (Seller) and Phillip A. Wolf (Buyer) concerning the Property described in the Agreement. Capitalized terms used, but not defined herein shall have the meaning given them in the Agreement. All the terms and conditions of this Addendum are hereby incorporated by reference into and made a part of the Agreement.

1. Buyer is accessing treasury account for $75,000,000 and will pay Seller a total of $62,500,000 for the Property. The difference of $12,500,000 will not be paid to Seller, but will be held in escrow and returned to Buyer for additional property consolidations and configurations pertaining to the ranch. Seller agrees to assist Buyer in acquiring additional properties for BLM land swaps.

2. Seller will convey to Buyer all mineral rights Seller possesses on the Property including, without limitation, Bentonite, gravel, rock and construction grade minerals.

3. Closing of escrow will occur at Uinta Title & Insurance of Evanston, WY.

EXECUTED as of the Effective Date.

**SELLER:**

Beaver Creek Land & Cattle, LLC

By: _____
Its: Manager

**BUYER:**

Phillip A. Wolf
PO Box 16804
Golden, CO 80402

_____
Phillip A. Wolf

12

JS 44 (Rev. 12/07)                       CIVIL COVER SHEET                       

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Beaver Creek Land & Cattle, LLC., a Utah limited liability company | Phillip Wolf |
| (b) County of Residence of First Listed Plaintiff  Salt Lake County, UT (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant  Jefferson County, CO (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number) Bret F. King, King & King, LLC., P.O. Box 40, 610 W. Broadway, Suite 201, Jackson, WY 83001 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |  ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract |  ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury |  | ☐ 863 DIWC/DIWW (405(g)) |  |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / Habeas Corpus: |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land |  ☐ 530 General |  |  | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | IMMIGRATION |  | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
U.S. Civil Statute 28 U.S.C.A. § 1332(a)(1)
Brief description of cause:
Breach of real estate contract involving property in Wyoming

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint: JURY DEMAND:  ☐ Yes  ☒ No

**VIII. RELATED CASE(S) IF ANY**  (See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE  9-12-08           SIGNATURE OF ATTORNEY OF RECORD  [signature]  Attorney # : 5-2353

FOR OFFICE USE ONLY

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

Receipt # CHY005226