FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

SEP 1 5 2009

Stephan Harris, Clerk
Cheyenne

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

BEAVER CREEK LAND & ) No. **08-CV-202-J**
CATTLE, LLC., )
          Plaintiff, ) Defendant's pretrial memorandum
               ) and authorities.
     vs. )
               )
               )
Philip Andrew; Wolf, )
         Defendant. )

**Issues and Authorities**.

    COMES NOW, Defendant above named, to provide authorities and detail of material issues perceived to be outstanding by those charged with having far better reasoning powers and faculties. Since this Court has already ruled that federal law is Wyoming state law, the Defendant is certain of defeat regardless of what his contract with the Plaintiff says; the court has obviously been purchased. When faced with the chance to recuse, a trier of fact with full knowledge that the subject contract does not provide at all for what the Plaintiff claims proceeds, knowing that the Defendant did not contract to provide the money for the Plaintiff to become the owner of the subject land.

    **Exhibit A**: The subject contract.

    **Exhibit B**: Plaintiff's 1st admissions.

Defendant's pretrial memorandum
and authorities.              Page 1 of 7          Philip Andrew; Wolf
c/o P.O. Box 16804
Golden, CO 80402

The Court has held that, "Plaintiff alleges that Defendant failed to meet his obligations under the Agreement by failing to tender the purchase price at or before closing." (See Order to compel discovery filed Aug. 7, 2009, at ¶1). This is indeed what Plaintiff is claiming, but it is not represented as a mandate even remotely by any language in the subject Agreement; Plaintiff's lawsuit is a crime. (18 USC § 241).

The Defendant views as irrelevant all queries which do not at all relate to the language of the subject Agreement under which Plaintiff alleges a breach. Did the Defendant fail to obtain funding by the closing date agreed upon by the parties? Yes. Did the Defendant forfeit earnest money in sums agreed upon by the parties? Yes. Did the Defendant forfeit by such failure his right to participate in the acquisition of the subject property? Yes. Does the Agreement provide that Plaintiff shall acquire the subject property without reference to the Defendant? Yes. Did the Plaintiff ever become the owner of the property before or on the date of closing as contracted? Was the Plaintiff ever in a position to sell the property to the Defendant? No. Does the subject Agreement hold the Defendant to tendering the purchase price to the Plaintiff so Plaintiff could acquire the subject property? No.

> "*Under ordinary principles of contract law, one would construe the contract in terms of the parties' intent, as revealed by language and circumstance*. See *The Binghamton Bridge*, 3 Wall. 51, 74 (1866) ("All contracts are to be construed to accomplish the intention of the parties"); Restatement (Second) of Contracts § 202(1) (1979) ("Words and other conduct are interpreted in the light of all the circumstances, and *if the principal purpose of the parties is ascertainable it is given great weight*"). *If the language and circumstances showed that the parties intended the seller to* bear the risk of a performance-defeating change in the law, the seller would have to pay damages. See *id.*, § 261 (no liability where "a party's performance is made impracticable without his fault by the occurrence of an event [*i.e.*, the new environmental regulation] the nonoccurrence of which was a basic assumption on which the contract was made . . . unless the language or the circumstances indicate the contrary.")[.]" [1]
>
> "The FAA provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement. See 9 U.S.C. § 3 and 4. We have read these provisions to "manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer*, 500 U.S. at 25 (quoting *Moses H. Cone Memorial*

---

[1] See *United States v. Winstar Corporation*, 518 U.S. 839, 911 (1996).

Defendant's pretrial memorandum
and authorities.

Philip Andrew, Wolf
c/o P.O. Box 16804
Golden, CO 80402

*Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). *Absent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes* subject to arbitration. See *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) ("[T]he FAA's pro-arbitration policy does not operate without regard to the wishes of the contracting parties")." [2]

"*The contract, as we have explained, is not ambiguous*. Nor did the Tribe find itself holding the short end of an adhesion contract stick: the Tribe proposed and prepared the contract; C & L foisted no form on a quiescent Tribe. Cf. *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319-320, No.00-1342, 2001 WL 293669, *3 (CA4, Mar. 27, 2001) (where federal agency prepared agreement, including its arbitration provision, sovereign immunity does not shield the agency from engaging in the arbitration process)." [3]

"Nor did the district court err in construing the ambiguity against IMC. *We have repeatedly held that a contract will be construed most strongly against the party who drafted the contract. McNeiley*, 855 P.2d at 1244; *Brazelton v. Jackson Drug Co., Inc.*, 796 P.2d 808, 810 (Wyo. 1990); *Kelliher v. Herman*, 701 P.2d 1157, 1159 n.1 (Wyo. 1985). James Warila testified regarding the drafting of the lease agreement. IMC originally drafted the lease agreement with a ten year term. The Warilas rejected that lease agreement and suggested a five year term. The Warilas made no changes to the "desired use" language at issue today." [4]

The parties agreed to a closing date and earnest money in amounts which would vest in the Plaintiff upon Defendant's failure to obtain funding. Plaintiff did not become the owner of the subject property and did not appear at closing. Defendant was represented by Plaintiff to the owner of the subject property as a partner to Plaintiff. The Defendant felt safe with the language and terms of the subject contract and signed his name to it. William O. Beaman (U.S. Magistrate) and Alan B. Johnson (U.S. Dist. Judge) are criminals for allowing Plaintiff to pursue its claim unless the Agreement provides for this action.

18 U.S.C. § 241 Conspiracy against rights. *If two or more persons conspire to injure, oppress, threaten, or intimidate* any person in any State, Territory, Commonwealth, Possession, or District *in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States*, or because of his having so exercised the same; or

---

[2] See *EEOC v. Waffle House, Inc.*, 534 US 279, 289 (2002).
[3] See *C. & L. Enterprises, Inc v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 423 (2001).
[4] See *Idaho Migrant Council, Inc. v. Warila*, 1995 WY 15, 890 P.2d 39 (1995).

Defendant's pretrial memorandum
and authorities.                    Page 3 of 7                    Philip Andrew, Wolf
c/o P.O. Box 16804
Golden, CO 80402

*If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured -*

*They shall be fined under this title or imprisoned not more than ten years, or both*; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 3 Accessory after the fact.- *Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender* in order to hinder or prevent his apprehension, trial or punishment, *is an accessory after the fact*.

Except as otherwise expressly provided by any Act of Congress, *an accessory after the fact shall be imprisoned not more than one-half the maximum term of imprisonment* or (notwithstanding section 3571) fined not more than one-half the maximum fine prescribed for the punishment of the principal, or both; or if the principal is punishable by life imprisonment or death, the accessory shall be imprisoned not more than 15 years.

18 U.S.C. § 4 Misprision of felony. *Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known* the same to some judge or other person in civil or military authority under the United States, *shall be fined under this title or imprisoned not more than three years, or both*.

## Plaintiff's claims:

In Plaintiff's August 27, 2009 "Pretrial memorandum" (hereinafter "memorandum") certain representations are made which serve well to define and prove Plaintiff's guilt under federal criminal statutes, *a fortiori*, Plaintiff's failure to state a claim. Plaintiff states that the nature of the case is "[p]ursuant to the terms of the contract" the "Defendant's funds were necessary for Plaintiff to complete the purchase with [owner][.]" (See memorandum at pg.2). "Defendant is in clear default of the contract. Plaintiff was ready, willing and able to close this transaction [but] the transaction did not close solely due to Defendant's failure to provide the funds at closing." (*Id.* at pg.3). "The Defendant failed to meet his obligations under the Agreement by failing to tender the purchase price at or before closing" pursuant to Article __(?)__, §§ __(?)__ of the subject contract, "thereby breaching the Agreement."

Defendant's pretrial memorandum
and authorities.                    Page 4 of 7

1        No such obligation on the part of the Defendant is found in the subject Agreement

2  which "is the sole agreement, with no contingencies" like suing under federal law. (See **Ex.B**

3  hereto, Plaintiff's 1st Admissions at #6).

4        The nature of the case is the language of the subject contract which "is the sole

agreement, with no contingencies." Defendant denies having breached the subject contract as

5  the Plaintiff has alleged and he hereby reserves all rights not expressly waived on record.

6  Attached hereto as **Exhibit A** is a copy of the subject contract (emphasis not added) which

7  reads:

8

        **"Recitals**: B. Seller desires to sell, and Buyer desires to purchase, the Property, subject
9        to the terms and conditions of this Agreement.
                NOW, THEREFORE, in consideration of the mutual covenants set forth below
10      in this Agreement, and other good and valuable considerations, Seller and Buyer agree
        as follows[.]"
11

12        "§ 4.1.4 Seller is the owner of the property or will be the Owner of the Property on or
        before the Closing."

13

        "§ 8.1 <u>Governing law</u>. The laws of the State of Wyoming shall govern the validity,
14      enforcement, and interpretation of this Agreement, unless otherwise specified herein."

15        Pursuant to the subject contract, Plaintiff has reserved rights to remedy only under

16  Wyoming state law, as has the Defendant. No express retention of any other remedy at law or

17  equity is made here by either party to the subject contract. The jurisdiction of this Court was

18  invoked under 28 USC § 1332(a)(1) which is not Wyoming state law. Inasmuch as the parties

to the subject contract have waived remedy under all but Wyoming state law, Plaintiff has

19  failed to state a claim upon which relief may be granted.

20        As it relates to the Plaintiff, the term "Seller" is to be understood as inaccurate for the

21  purposes of the subject property. It is the understanding of the Defendant that the Plaintiff has

22  never been more than a prospective purchaser of the subject property. Plaintiff excepted an

23  earnest money payment of "Zero Dollars."

24        "§ 2.2 <u>Earnest Money Deposit</u>. Concurrent with the full execution of this Agreement,
25      Buyer shall deposit with Title Company the sum of Zero Dollars ($00.00) (the
        "**Earnest Money**"). Title Company shall hold the Earnest Money, in escrow, to be
26      applied against the Purchase Price at Closing. *If buyer fails to close its purchase of the*

Defendant's pretrial memorandum
and authorities.          Page 5 of 7

Philip Andrew, Wolf
c/o P.O. Box 16804
Golden, CO 80402

1      ***Property on or before the Closing Date, the Earnest Money shall be released to Seller***, Which Seller may retain in addition to any and all other remedies available to Seller in law or equity."

2

3      This clause of the contract makes no mention of the Defendant being liable to the

4  Plaintiff for future damages or for any other ramification or adverse effect due to non-

5  performance or breach, and the restriction to Wyoming state follows near the contract's end, at

6  § 8.1, *supra*. "Remedies" are a means to preserve a right, and are not rights themselves. [5] This

7  clause makes no mention of the compensation or damages the Plaintiff is claiming directly and

   solely hereunder.

8

    Had the contract not contained this stipulation restricting enforcement to Wyoming state

9  when it was first proposed, doubtless he would have asked that such a clause be added to the

10  terms of the contract. To read § 2.2 of the subject contract as a reservation of other remedies,

11  when in fact it says "may" instead of "shall," and when the Plaintiff does not later state an

12  intention to make such a reservation, renders § 2.2 moot; of no effect.

13      The Court has been aware of all of this but has chosen to perpetuate it rather than halt it

   for the crime that it is. Plaintiff's memorandum makes no reference to specific contractual

14  provisions to substantiate its claims that Defendant is in breach.

15  ///

16  ///

17  ///

18  ///

   ///

19  ///

20  ///

21  ///

22  ///

23  ///

   ///

24  ///

25  ///

26  _____

   [5] See *Black's*, 6th "remedy."

Defendant's pretrial memorandum
and authorities.        Page 6 of 7

Philip Andrew; Wolf
c/o P.O. Box 16804
Golden, CO 80402

## VERIFICATION

I, Philip Andrew; Wolf, Complainant hereto, do hereby declare under penalties of perjury (28 USC § 1746) that the foregoing accounting of facts are true and correct to the best of my knowledge, and that I am entitled to the relief requested herein. Executed this 14th day of September, 2009.

Signed: _____

Philip Andrew; Wolf, Defendant

The above affirmation was SUBSCRIBED and duly SWORN to before me this 14th day of September, 2009, by Philip Andrew; Wolf.

I, Tina M. White, am a Notary under license from the State of Colorado whose Commission expires 1-2-2011, and be it known by my hand and my Seal as follows;

_____
Notary signature

Dated: 9/14/09

_____

Philip Andrew; Wolf
P.O. Box 16804
Golden, CO 80402

/ / /

/ / /

/ / /

/ / /

CERTIFICATE OF SERVICE: I, _____, do hereby certify that I did deposit in U.S. Post First Class and in adequate packaging two copies of the attached documents (Philip Andrew; Wolf's pretrial memorandum) addressed to the following parties: Brett F. King, 610 West Broadway #201, P.O. Box 40, Jackson, WY 83001. I am a Citizen of the United States, I am over 18 years of age, and I am not party to this action.

_____          _____
Date                                                          Signature

Defendant's pretrial memorandum
and authorities.                              Page 7 of 7

Philip Andrew; Wolf
c/o P.O. Box 16804
Golden, CO  80402

# Exhibit A:

**Ex.A,** The contract for the purchase of the subject land.

Exhibit: __A__

# Exhibit B:

**Ex.B**, Plaintiff's 1st Admissions.

Exhibit: __B__

Bret F. King
King & King, LLC
P.O. Box 46
Jackson, WY 83001
(307) 733-2904
(307) 733-3058 fax

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

BEAVER CREEK LAND & CATTLE, LLC )
a Utah Limited Liability Corporation, )
                                 )
            Plaintiff,         )
                                   )
     v.                              ) Civil Action No. 08-CV-202-J
                                   )
PHILLIP A. WOLF,            )
                                   )
            Defendant.     '    )

## PLAINTIFF'S SECOND REQUESTS FOR ADMISSIONS AND SECOND SET OF INTERROGATORIES TO DEFENDANT

The Plaintiff Beaver Creek Land and Cattle, LLC through its attorney King & King,

LLC, hereby propounds the following Second Requests for Admissions and Second Set of

Interrogatories to be answered by Defendant Phillip A. Wolf in writing and under oath, no later

than thirty (30) days following the date of service hereof.

## DEFINITIONS AND REQUIREMENTS

Each interrogatory calls for all information known by you and your attorney(s), officer(s)

and agent(s), and all information from sources under your control, and all information given to

you by others.

Whenever in the following Interrogatories any writing must be described or identified, all

writings in the possession or control of yourself and your representatives are included, and all

such writings shall be identified by date, author, addressee, title, subject, title of document

(contract, invoice, work order, letter or other identifying designation), number and physical

description. As to each such writing, the address of the present location of such writing, and the

name and address of the custodian thereof are also requested. The term "writing" is used herein

in its broadest sense, and includes any original reproduction or copy of any kind of writing or any

documentary material including, without limitation, correspondence, memoranda, inter-office

communications, notes, diaries, contract documents, drawings, plans, specifications, estimates,

EXHIBIT
2

vouchers, permits, written ordinances, minutes of meetings, invoices, billings, checks, reports, studies, telegrams, notes of telephone conversations, and notes of any oral communications.

With respect to each Interrogatory herein relating to oral communications, it is intended and requested that the answers to each said Interrogatory set forth whether or not the oral communication was by telephone, or face to face, and also that each answer set forth the names, addresses, business positions and occupations of the persons involved in the said communications, and the names and addresses of any other persons present during said communications.

Whenever in the course of answering these Interrogatories, information is called for which is other than within the personal knowledge of the person executing the answers hereto, you are requested, in addition to providing such information, to provide the name, address, telephone number, official capacity and job title of each person providing such information to you, or if the information is obtained from writing, to identify each such writing as described above.

Supplementation of responses is hereby requested to all Interrogatories, which seek the following information:

    i.    The identity and location of persons having knowledge of discoverable facts.

    ii.    The identity and location of experts expected to be called at trial, and the subject matter of their testimony.

Supplementation of responses is also requested for any information, which you receive that shows an original response to these Interrogatories was incorrect when made, or although correct when made, is no longer true in light of such new information. The duty to supplement shall be continuing as to the above-described types of information, and supplementary responses are hereby requested to be served whenever such information is discoverable or determined.

"Document" or "documents" means each and every note; memorandum; letter; pamphlet; manual; parts book; telegram; telex communication; written correspondence or communication; telephone note or message; handwritten; drawing; graph; chart; exhibit; sketch; blueprint; specification; calculation; diagram; computer program; computer printout; computer tape; tape recording; report; photograph; photographic negative or transparency; map; plat; videotape recording; movie film; contract; agreement; warranty claim; repair record; inspection report;

Plaintiff's First Set of Interrogatories and Second Set of Interrogatories
Stephen Ray Land v. Conn, et al. v. Phillip J. Wade
Page 2 of 6

check sheet; finished unit inspection card; technical bulletin, service bulletin, recall notice, model, microfilm record; deposition, affidavit, interrogatory, interrogatory answer, pleading, judgment, and every other paper or record or written or graphic material of any kind or description whatsoever.

## REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:** Please admit that the attached hereto as *Exhibit 1* is a correct and accurate copy of the Purchase and Sale Agreement, hereinafter "Agreement" between yourself and the Plaintiff.

**ANSWER:** *Admitted*

**REQUEST FOR ADMISSION NO. 2:** Please admit that you signed the Agreement between yourself and Plaintiff on or about May 20, 2008

**ANSWER:** *Admitted*

**REQUEST FOR ADMISSION NO. 3:** Please admit that you signed an addendum to the Agreement between yourself and Plaintiff, entitled "Addendum A" on or about May 20, 2008.

**ANSWER:** *Admitted*

**REQUEST FOR ADMISSION NO. 4:** Please admit that the attached hereto as *Exhibit 2* is a correct and accurate copy of Addendum A to the Agreement between yourself and Plaintiff.

**ANSWER:** *Admitted*

**REQUEST FOR ADMISSION NO. 5:** Please admit that the Agreement executed on May 20, 2008, along with Addendum A, was and is the sole agreement, with no contingencies, between yourself and Plaintiff regarding the purchase of the property indicated in the agreement

**ANSWER:** *Not Admitted*

**REQUEST FOR ADMISSION NO. 6:** Please admit that you breached the Agreement when

you failed to tender the purchase price before or on the date of closing.

**ANSWER:** *No ... it was not breached*

**REQUEST FOR ADMISSION NO. 7:** Please admit that no actions on the part of the Plaintiff

caused you to breach the contract

**ANSWER:** *Plaintiff re failed to ...*

## INTERROGATORIES

**INTERROGATORY NO. 1:** For any of the admissions served upon you in this matter that

were denied, please provide an explanation as to why they were denied, and identify any

document, or other materials used to support your contention and or denial

**ANSWER:** *The wife is to...*

**INTERROGATORY NO. 2:** Please identify who prepared or provided you with the Private

Discharging and Indemnity Bond, No. 10001, with an issuance date of May 7, 2008 and date of

expiration of May 6, 2028 with a stated value of three hundred million dollars

($300,000,000.00)

**ANSWER:** *Myself and Successors*

DATED this - 14 - day of May, 2009

Bret F. King
Wyoming Bar No. 5-2359
King & King, LLC
P.O. Box 40
Jackson, WY 83001
(307) 733-2904
Attorney for Plaintiff

Plaintiff's Second Request for Admission and Second Set of Interrogatories
*Green v. ... and Wright*  *v. Barr & Wolf*
Page 4 of 8

## VERIFICATION

STATE OF COLORADO
COUNTY OF Jefferson ss.

I, Philip A. Wolf, being first duly sworn under oath state that I have read the foregoing answers to Interrogatories and the statements contained therein are true and correct to the best of my information, knowledge and belief.

DATED this 18 of June 2009



Philip A. Wolf

Subscribed and sworn to before me by

WITNESS my hand and official seal

this 18 day of June, 2009

Tina M. White

Notary Public

[Notary seal: TINA M. WHITE, NOTARY PUBLIC, STATE OF COLORADO]

My commission expires 1-2-2011

My Commission Expires 01/02/2011

## CERTIFICATE OF SERVICE

This is to certify that on this 14 day of May, 2009, a true and correct copy of the foregoing was served upon the following person, by electronic mail and by placing the same in the service indicated, postage prepaid, addressed as follows:

Philip A. Wolf                                    [X]   U. S. Mail
4855 Miller Street                                [ ]   Hand-Delivery
Wheat Ridge, CO 80033                             [ ]   Telefacsimile
Plywolf1@gmail.com                                [X]   E-Mail

King & King, LLC

Plaintiff's Second Revised 3rd & 4th set of 1st & 2nd Set of Interrogatories
Jensen et al vs and et al          Jordan F. Wolf
Page 5 of 5

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT ("**Agreement**") is made as of May 20, 2008 (the "**Effective Date**"), by and between Phillip A. Wolf ("**Buyer**"), and Beaver Creek Land & Cattle, LLC ("**Seller**"). Buyer and Seller are sometimes referred to herein as the "parties" or, individually, as a "party."

### RECITALS:

A. Seller owns or will own certain real property located in Hot Springs County, Wyoming and commonly known as the Lost Peaks Ranch, which is more particularly described on exhibit A attached hereto (the "**Property**"). The Property includes all water and mineral rights that Seller acquired in its purchase of the Property that are appurtenant to the Property.

B. Seller desires to sell, and Buyer desires to purchase, the Property, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants set forth below in this Agreement, and other good and valuable consideration, Seller and Buyer agree as follows:

### AGREEMENT:

### ARTICLE I

1.1 Defined Terms. Capitalized terms used in this Agreement have the meaning given to them in this Agreement.

1.2 Purchase and Sale. Upon the terms and conditions stated below, Seller hereby agrees to sell and convey the Property to Buyer, and Buyer hereby agrees to purchase the Property from Seller and to pay the Purchase Price to Seller

### ARTICLE II

2.1 Purchase Price. The purchase price for the Property shall be Seventy Five Million Dollars ($75,000,000.00) (the "**Purchase Price**"). Buyer shall pay the Purchase Price, less the amount of the Earnest Money Deposit, to Seller in cash at Closing. Buyer shall pay purchase price to Seller via Treasury Account to escrow for closing.

2.2 Earnest Money Deposit. Concurrent with the full execution of this Agreement, Buyer shall deposit with Title Company the sum of Zero Dollars ($00.00) (the "**Earnest Money**"). Title Company shall hold the Earnest Money, in escrow, to be applied against the Purchase Price at Closing. If Buyer fails to close its purchase of the Property on or before the Closing Date, the Earnest Money shall be released to Seller, which Seller may retain in addition to any and all other remedies available to Seller in law or equity

### ARTICLE III

EXHIBIT

1

## ARTICLE III

3.1    Title Insurance.  At the Closing, Seller shall cause a ALTA standard Owner's Policy of Title Insurance (the "**Title Policy**") for the Property to be furnished to Buyer. Seller shall pay the title insurance premium for the Title Policy. Buyer shall have the right to obtain extended coverage for the Title Policy by paying that portion of the title insurance premium required to obtain any extended coverage

## ARTICLE IV

4.1    Seller's Representations & Warranties  Seller represents and warrants to Buyer that the following statements are true and shall be true on the Closing Date:

4.1.    Seller possesses all requisite power and authority to enter into this Agreement and to perform its obligations according to the terms and conditions of this Agreement.

4.1.2    The execution of this Agreement or any instrument or document required by this Agreement, and the consummation of the transaction contemplated by this Agreement will not violate any order, ruling, certificate or license, regulation or demand of any court or regulatory agency to which Seller or the Property is subject or any agreement to which Seller is a party.

4.1.3    This Agreement, when duly executed by Seller, shall constitute a valid, legal and binding obligation of Seller, and shall be enforceable.

4.1.4    Seller is the owner of the Property or shall be the Owner of the Property on or before the Closing.

## ARTICLE V

5.1    Buyer's Representations & Warranties.  Buyer represents and warrants to Seller that the following statements are true and shall be true on the Closing Date:

5.1.1    The execution of this Agreement or any instrument or document required by this Agreement, and the consummation of the transaction contemplated by this Agreement will not violate any order, ruling, certificate or license, regulation or demand of any court, regulatory agency or other tribunal to which Buyer is subject or to any agreement to which Buyer is a party  The consummation will be through a treasury account as outlined in section 2.1.

5.1.2    This Agreement, when duly executed by Buyer, shall constitute a valid, legal and binding obligation of Buyer, and shall be enforceable.

## ARTICLE VI

6.1    Date and Place of Closing.  The closing of the transactions described in this Agreement (the "**Closing**") shall take place on a date determined by Seller on or before June 30,



6.2 Items to be delivered at the Closing.

6.2.1 Seller. On or before the Closing Date, Seller shall deliver to Title Company each of the following items, to be delivered to Buyer at the Closing:

6.2.1.1. A Special Warranty Deed in the statutory form (the "**Deed**"),

6.2.1.2. A bill of sale for the "cow camp," range improvements and other personal property and equipment to be transferred at the Closing; and

6.2.1.3. All additional documents and instruments which are reasonably necessary to the consummation of this transaction.

6.2.2 Buyer. On or before the Closing Date, Buyer shall deliver to Title Company each of the following items:

6.2.2.1. Valid funds in the full amount of the Purchase Price, less the Earnest Money Deposit, plus Buyer's share of Closing costs and prorations as provided below; and,

6.2.2.2. All additional documents and instruments which are reasonably necessary to the consummation of this transaction.

6.3 Closing Prorations. Ad valorem and similar taxes and assessments relating to the Property shall be prorated between Seller and Buyer as of the Closing Date, based upon the best available estimates of the amount of taxes that will be due and payable on the Property during the calendar year of the Closing. All other expenses of the Property and any rental income shall also be prorated as of the Closing Date. The provisions of this section shall survive the Closing and delivery of the Deed.

6.4 Closing Costs. All escrow and Closing fees charged by Title Company shall be divided equally between, and paid by, Buyer and Seller. Buyer shall pay all recording fees. Seller shall pay the premium for the Title Policy. Buyer and Seller shall each pay for the cost of their own legal counsel and other advisors in connection with this transaction.

## ARTICLE VII

7.1 No Broker; Indemnity. Seller and Buyer represent and warrant to each other that neither has contacted any real estate broker, finder, or other party in connection with this transaction, to whom any real estate brokerage, finder, or other fees may be due or payable with respect to the transaction contemplated hereby. The provisions of this section shall survive the Closing and delivery of the Deed.

7.2 Post-Closing Covenants. Buyer hereby acknowledges and agrees that (i) a former owner of the Property has the right to continue to graze cattle on the deeded portions of the Property from and after the Closing until, October 15, 2008, subject to a lease that Seller shall assign to Buyer,

7

at Closing, (ii) such former owner may remain in possession of the "Mill Iron" location home on the Property until September 1, 2008, (iii) the former owner's agent, "John" may continue to occupy the home he occupies as of the Effective Date until October 15, 2008, (iv) such former owner shall be entitled to hunting rights for 1 elk and 2 deer for the 2008 season, and . The provisions of this section shall survive the Closing and delivery of the Deed.

## ARTICLE VIII

8.1    Governing Law.  The laws of the State of Wyoming shall govern the validity, enforcement, and interpretation of this Agreement, unless otherwise specified herein.

8.2    Entirety and Amendments.  This Agreement embodies the entire agreement between the parties and supersedes any prior agreements and understandings, if any, relating to the Property, and may be amended only by written instrument executed by Seller and Buyer.

8.3    Multiple Counterparts.  This Agreement may be executed in a number of identical counterparts.  Each of such counterparts is to be deemed an original for all purposes, and all such counterparts shall, collectively, constitute one agreement.

8.4    Parties Bound.  This Agreement shall be binding upon and inure to the benefit of Seller and Buyer, and their respective heirs, successors and assigns.

8.5    Further Acts.  In addition to the acts and deeds recited herein and contemplated to be performed, executed, and delivered by Seller and Buyer, Seller and Buyer agree to perform, execute, and deliver or cause to be performed, executed, and delivered at the Closing or after the Closing any and all such further acts, deeds, and assurances as may be necessary to consummate the transactions contemplated hereby.  Buyer may record a memorandum of this Agreement against the Property.

EXECUTED as of the Effective Date.

**SELLER**

Beaver Creek Land & Cattle, LLC

By: _____
Its: _Manager_____

**BUYER:**

Phillip A. Wolf
PO Box 8404
Golden, CO 80402

_____
Phillip A. Wolf

## ADDENDUM A

## PURCHASE AND SALE AGREEMENT

### Dated May 20, 2008

This Addendum is an integral part of the Purchase and Sale Agreement ("the Agreement") dated May 20, 2008 between Beaver Creek Land & Cattle, LLC (Seller) and Phillip A. Wolf (Buyer) concerning the Property described in the Agreement. Capitalized terms used, but not defined herein shall have the meaning given them in the Agreement. All the terms and conditions of this Addendum are hereby incorporated by reference into and made a part of the Agreement.

1. Buyer is accessing treasury account for $75,000,000 and will pay Seller a total of $62,500,000 for the Property. The difference of $12,500,000 will not be paid to Seller, but will be held in escrow and returned to Buyer for additional property consolidations and configurations pertaining to the ranch. Seller agrees to assist Buyer in acquiring additional properties for BLM land swaps.

2. Seller will convey to Buyer all mineral rights Seller possesses on the Property including, without limitation, Bentonite, gravel, rock and construction grade minerals.

3. Closing of escrow will occur at Uinta Title & Insurance of Evanston, WY

EXECUTED as of the Effective Date.

**SELLER.**

Beaver Creek Land & Cattle, LLC

By: _____

Its. Manager

**BUYER:**

Phillip A. Wolf
PO Box 6804
Golden, CO 80402

Phillip A. Wolf

## ADDENDUM A

### PURCHASE AND SALE AGREEMENT

#### Dated May 20, 2008

This Addendum is an integral part of the Purchase and Sale Agreement ("the Agreement") dated May 20, 2008 between Beaver Creek Land & Cattle, LLC (Seller) and Phillip A. Wolf (Buyer) concerning the Property described in the Agreement. Capitalized terms used, but not defined herein shall have the meaning given them in the Agreement. All the terms and conditions of this Addendum are hereby incorporated by reference into and made a part of the Agreement.

1. Buyer is accessing treasury account for $75,000,000 and will pay Seller a total of $62,500,000 for the Property. The difference of $12,500,000 will not be paid to Seller, but will be held in escrow and returned to Buyer for additional property consolidations and configurations pertaining to the ranch. Seller agrees to assist Buyer in acquiring additional properties for BLM land swaps.

2. Seller will convey to Buyer all mineral rights Seller possesses on the Property including, without limitation, Bentonite, gravel, rock and construction grade minerals.

3. Closing of escrow will occur at Uinta Title & Insurance of Evanston, WY

EXECUTED as of the Effective Date.

**SELLER:**

Beaver Creek Land & Cattle, LLC

By: _____

Its: _Manager_

**BUYER:**

Phillip A. Wolf
PO Box 16804
Golden, CO 80402

_____
Phillip A. Wolf

EXHIBIT

2

12